## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **JOVANNI M. TAYLOR,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:20CV00497 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **C. SHELTON, ET AL.,** | ) | Judge James P. Jones |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Jovanni M. Taylor, Pro Se Plaintiff; Ann-Marie White and Margaret Hoehl O'Shea, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Defendants.*

The plaintiff, Jovanni M. Taylor, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that a prison official physically assaulted her during a frisk search and retaliated against her for trying to complain about the incident.[1]  Taylor also alleges that other officials conspired to cover up the incident.  The matter is presently before me on the defendants' dispositive motions and Taylor's responses thereto.  After review of the parties' submissions, I conclude that while several of Taylor's claims must be dismissed, the physical assault claim against defendant Shelton will remain.

---

[1] Taylor is also known as Jovan.  Although confined at a prison for male inmates, Taylor uses feminine pronouns in reference to herself.  Accordingly, I will do so as well in this Opinion and Order.

## I. BACKGROUND.

At the time these claims arose, Taylor was confined at Keen Mountain Correctional Center ("KMCC"), a prison facility operated by the Virginia Department of Corrections ("VDOC").  Liberally construed, Taylor's Amended Complaint and other submissions[2] offer the following factual basis for her claims.  On May 6, 2020, in response to a fight in Taylor's housing unit, officers frisk searched all inmates and sent them to their cells for a lockdown.  Taylor states that she must be searched by a female staff member.  Decl. Opp'n. 3, ECF No. 43.  She alleges that C-Building Unit Manager C. Shelton, a female officer, came to the pod after all except four inmates, including Taylor, had been searched.  "Shelton was angry, or irritated, and was using profanity." *Id.*  Taylor was the last inmate in the pod to be searched.

According to Taylor, Shelton frisked one of Taylor's legs and then told her "open your legs wider."  Am. Compl. 3, ECF No. 16.[3]  Then, when Shelton "went

---

[2]  When Taylor filed this § 1983 action, the court entered an order informing her that the Complaint included many misjoined claims and directed Taylor to file an Amended Complaint, raising only properly joined claims.  Taylor responded with the Amended Complaint that is currently before the court, which the court then served on the defendants it named.  In response to the defendants' motions, Taylor has also filed affidavits, a declaration, and various attached documents that provide additional facts about her claims, ECF Nos. 40 and 43.  I have included facts from these additional submissions in this summary of Taylor's facts.

[3]  For the sake of consistency, references to page numbers in the Amended Complaint and other documents in the record refer to the page numbers assigned by the court's electronic filing system.

up [Taylor's] inner thighs she went up fast and hard. Hitting [Taylor] in [her] private region with force." *Id*.

Taylor then asked Shelton for a complaint form. Shelton "yelled out loud why?" *Id.* She did not give Taylor the requested form. Taylor also asked Shelton for permission to retrieve her property items from a nearby table in the pod (some food items, an electronic tablet device, and earbuds). Taylor alleges that Shelton had allowed other inmates to retrieve their property before they returned to their cells. *See* Decl. Opp'n 3, ECF No. 43. Shelton refused Taylor's request and told her to go to her "room." *Id.* Shelton then took Taylor's property items to another official's office, and Taylor did not recover the items for more than 24 hours. Taylor states, "This action by C. Shelton [was] retaliation for [Taylor's] good faith attempt to use" the grievance procedures to complain about Shelton's sexual assault. Am. Compl. 4, ECF No. 16. Taylor also complains that Shelton's decision about the property items violated equal protection.

Later on May 6, 2020, Taylor alleges that she went to medical "due to the searing pain from [her] private region to [her] stomach. "After seeing Doctor White her examination proved [Taylor] was assaulted in [her] private region." *Id.* at 3. Medical reports in the record indicate that Dr. White noted "mild tenderness" in Taylor's "left prepubertal region, left testicle tenderness" and "mild fullness compared to right side," but without bruising. Resp. Opp'n Attach. at 5, ECF No.

40-1.  Dr. White prescribed pain medication as needed for ten days and use of an icepack on the affected area for twenty-minute periods for pain and swelling.  Taylor also filed a criminal complaint with a local magistrate, accusing Shelton of sexually assaulting her during the frisk search on May 6, 2020.  *Id.* at 22.

Taylor pursued administrative remedies about Shelton's actions on May 6, 2020.  Unhappy with responses by defendants Whitt and Davis, Taylor appealed to the Regional Ombudsman, without success.  Taylor has now moved to amend to identify the ombudsman as Curtis Parr, a motion I will grant.

Taylor alleges that KMCC Institutional Investigator M. Hodges did not properly investigate the incident.  Hodges reported that he had investigated the incident between May 6 and August 18, 2020 and did not find sufficient evidence to substantiate Taylor's accusation.  Taylor also contends that Hodges was part of a conspiracy to cover up Shelton's sexual assault on May 6, 2020.

I construe Taylor's pro se Amended Complaint as asserting these § 1983 claims: (1) on May 6, 2020, Shelton (a) used excessive force against Taylor by physically assaulting her genitalia while frisking her,[4] (b) retaliated against Taylor

---

[4] Specifically, Taylor alleges that Shelton's actions violated her "federal rights by assaulting" her, which I construe as an excessive force claim.  Am. Compl. 3, ECF No. 16. Taylor also alleges that Shelton violated a federal policy governing employee conduct with inmates to prevent abuse.  As a state employee, however, Shelton is governed by state employment policies, and alleged violations of such state policies are not constitutional violations actionable under § 1983.  *See, e.g., Canada v. Clarke*, No. 7:15CV00065, 2016 WL 5416630, at *9 (W.D. Va. Sept. 27, 2016), *aff'd*, 717 F. App'x 361 (4th Cir. 2018)

for her request of an Informal Complaint form by refusing to provide her a form, and (c) refused to allow Taylor to retrieve her personal property, in violation of equal protection and in retaliation for Taylor's apparent intent to file a complaint; (2) Whitt, Davis, and Parr failed to protect Taylor and responded inappropriately to her administrative remedies complaining about Shelton's actions; and (3) Hodges, as part of a conspiracy to cover up Shelton's alleged misdeeds, did not appropriately investigate Taylor's accusations against Shelton.  As relief, Taylor seeks monetary damages and transfer to another facility.

Defendants Davis, Whitt, and Hodges have filed a Motion to Dismiss, and defendant Shelton has filed an Answer and a partial Motion for Summary Judgment that also argues that some claims must be dismissed for failure to state a claim. Taylor has responded to these motions.  Thus, I find them to be ripe for consideration.

---

(unpublished) (citing *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990)).  In other submissions, Taylor refers to Shelton's actions as a criminal sexual assault.  Taylor may not use his § 1983 action as a means to instigate a criminal investigation or charge against Shelton.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (individual has no constitutional right to criminal investigation or prosecution of anyone).  While Shelton's motion characterizes Taylor's assault claim as arising under state law, I do not find any such state law claim to be asserted in the Amended complaint.

II.  DISCUSSION.

A.  Claims to be Dismissed.

A district court may dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks, citations, and alterations omitted).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

First, I will dismiss all § 1983 claims for monetary damages against all of the defendants in their official capacities.  Neither a state, nor state officials acting in their official capacities constitute "persons" within the meaning of § 1983 when sued for monetary relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Second, Taylor apparently wants to hold Whitt, Davis, and Parr vicariously liable for Shelton's alleged wrongdoing, merely because of their supervisory status. *Iqbal*, 556 U.S. at 676 (finding no vicarious liability for supervisory defendants in federal civil rights actions). Taylor vaguely contends that these defendants should have prevented subordinates like Shelton from violating his rights. A claim of supervisory liability under § 1983 requires specific elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citation omitted). Taylor does not state facts meeting any of these elements. In particular, she fails to point to any past incidents of force putting the defendants on notice that Shelton posed a risk of harm to inmates.

Third, I must dismiss Taylor's claims against Whitt, Davis, and Parr, based merely on the nature of the responses they provided to Taylor's administrative remedies and appeals. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process," grievance form, or grievance proceeding outcome. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir.

2017).   Certainly, the defendants' grievance responses did not contribute to any constitutional violation that Shelton may have committed against Taylor on May 6, 2020.   Taylor may be contending that after reviewing her grievance documents, these defendants should have recognized VDOC policy violations and taken steps to discipline Shelton.   As already discussed, violations of state policy do not equate to violations of Taylor's constitutional rights so as to be actionable under § 1983.  *Canada*, 2016 WL 5416630, at *9.

For these reasons, Taylor's submissions fail to state facts showing that Whitt, Davis, or Parr took, or failed to take, any action that deprived her of a constitutionally protected right.   Therefore, I will grant the Motion to Dismiss as to all § 1983 claims against Whitt and Davis.   I will also summarily dismiss such claims against Parr, pursuant to 28 U.S.C. § 1915A(b)(1).[5]

Fourth, I will grant the Motion to Dismiss Taylor's claim that Hodges conducted a shoddy investigation of the sexual assault accusation against Shelton. Clearly, Hodges' actions or inactions after Shelton's alleged assault did not cause that assault.   And "even assuming that prison policy required an investigation, state officers' violations of prison policies do not equate with constitutional violations, and thus are not actionable under § 1983."  *Roberson v. Davis*, No. 7:20CV00280,

---

[5]   Under § 1915A(b)(1), the court is required to review and dismiss a prisoner's complaint against a governmental officer if that complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted."

2020 WL 7586912, at *4 (W.D. Va. Dec. 22, 2020) (explaining that "to the extent [plaintiff] is attempting to state a claim against any of these defendants based on an alleged failure to adequately investigate the circumstances of the altercation, this does not state a viable constitutional claim.") (citing other cases).

Fifth, I must dismiss Taylor's conspiracy claim.

> To establish a civil conspiracy claim actionable under § 1983, a plaintiff must demonstrate that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy," resulting in deprivation of a federal right. *Glassman v. Arlington Cnty*., Va, 628 F.3d 140, 150 (4th Cir. 2010) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). A plaintiff must make specific allegations that reasonably lead to the inferences that members of the alleged conspiracy shared the same conspiratorial objective to try to "accomplish a common and unlawful plan" to violate the plaintiff's federal rights. *Hinkle*, 81 F.3d at 421. As such, a complaint's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Id.* at 422. Merely labeling a chronological series of actions by multiple individuals as "conspiracy" or providing only a conclusory, formulaic recitation of the legal elements of conspiracy will not do. *Nemet Chevrolet*, 591 F.3d at 255.

*Snodgrass v. Messer*, No. 7:16CV00050, 2017 WL 975992, at *3 (W.D. Va. Mar. 10, 2017), *aff'd*, 694 F. App'x 157 (4th Cir. 2017) (unpublished).

At most, Taylor asserts that Hodges conspired with others, in unspecified ways while investigating Taylor's accusations against Shelton. A conspiracy claim based merely on such conclusory assertions and unsupported conjecture does not state a constitutional conspiracy claim worthy of additional development in a federal

civil rights action.  I will grant the Motion to Dismiss as to Taylor's conspiracy claim.

### B.  Retaliation and Equal Protection Claims.

In Shelton's dispositive motion, she asserts that Taylor's allegations fail to state any actionable § 1983 claims of retaliation.  I agree.

To establish a colorable First Amendment retaliation claim under § 1983, a plaintiff must present facts showing that the plaintiff's exercise of a constitutional right caused or motivated an action against the plaintiff that adversely affected her constitutional rights.  *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) ("Martin II"); *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) ("Martin I") (noting plaintiff "must allege that (1) she engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between [the plaintiff's] protected activity and the defendant's conduct") (citation and alterations omitted).  The plaintiff must provide more than "naked allegations of reprisal."  *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).  The plaintiff may satisfy the adverse action element by showing that the defendant's "allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks and citations omitted).  Only if the plaintiff "establishes h[er]

protected conduct was a substantial or motivating factor in the defendant's decision to take adverse action" is the defendant then "tasked with explaining why her decision was not animated by retaliatory motive." *Martin II*, 977 F.3d at 301.

Taylor alleges that after Shelton's alleged sexual assault against her on May 6, 2020, Taylor asked Shelton for an Informal Complaint form.[6]  Taylor implies that because Shelton believed Taylor's request signaled her intent to file a grievance about the assault, Shelton retaliated by refusing to provide Taylor with the requested form and by refusing Taylor's later request to retrieve her property items from the nearby table.

Shelton's alleged actions cannot qualify as *adverse* for purposes of a § 1983 retaliation claim.  While Shelton's behavior apparently frustrated Taylor personally and made her feel mistreated, I cannot find that failing to provide a readily available form or withholding unrelated property items for a few hours would "likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500 (internal quotation marks and citations omitted). Taylor offers no facts suggesting that Shelton's actions hindered her efforts to file

---

[6] Shelton's motion includes evidence that to exhaust administrative remedies before filing a federal lawsuit, VDOC inmates must complete the following sequence of filings about the event in question:  an Informal Complaint, a Regular Grievance, and whatever level of appeal is available under the VDOC grievance procedure.  *See* Mem. Supp. Mot. Summ. J. Breeding Aff. ¶¶ 4–8 and Enclosure A (VDOC Operating Procedure 866.1), ECF No. 35-1.

an Informal Complaint and then a Regular Grievance about Shelton's conduct. Indeed, the record indicates that Taylor filed Informal Complaint forms about Shelton's alleged assault (and her other actions) within hours after the events occurred. Similarly, the allegedly detained property items did not include anything necessary to Taylor's ability to pursue administrative remedies or even a lawsuit against Shelton. Moreover, Taylor retrieved the withheld items in just over a day. Based on my finding that Taylor's allegations and evidence do not support the required elements of a viable retaliation claim against Shelton, I will dismiss her retaliation claims with prejudice, pursuant to Rule 12(b)(6).

Taylor also asserts that Shelton treated her differently than other inmates that day, by refusing to allow Taylor to retrieve her property in the pod, when Shelton had permitted other inmates to do so. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *King v. Rubenstein*, 825 F.3d 206, 220–22 (4th Cir. 2016) (citation omitted). To succeed in an equal protection claim, Taylor must show that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the

difference in treatment." *Willis v. Town of Marshall,* 426 F.3d 251, 263 (4th Cir. 2005).[7]

Even when an official action or policy "impinges on inmates' constitutional rights," it "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). To determine if an action or policy is reasonable, I must consider: (1) whether there is a "valid, rational connection" between the policy and the penological interest"; (2) whether there are "alternative means of exercising the right" available to inmates; (3) the "impact accommodation of the asserted constitutional right will have on" various prison constituents and resources; and (4) "the absence of ready alternatives." *Id.* at 89, 90 (citation omitted).

I find no evidence that Shelton's refusal to permit Taylor to retrieve her property items violated her constitutional rights. First, given the special accommodations for frisk searches to which Taylor is accorded, she does not allege that she was similarly situated in all relevant respects to the other inmates that Shelton searched. Second, Taylor does not state facts showing that Shelton's decision to treat her property request differently was motivated from intentional discrimination based on Taylor's gender identity or any other improper reason.

---

[7] Because I conclude that Taylor's allegations themselves fail to state any claim of retaliation or equal protection claim, I need not resolve Shelton's alternative arguments that Taylor failed to exhaust available administrative remedies as to these claims.

Third, with Taylor as the last inmate to lockdown after a fight, I cannot find that it was irrational or arbitrary for Shelton to hurry Taylor back to her cell, when Taylor could safely retrieve her property items the next day.   I will summarily dismiss Taylor's equal protection claim against Shelton, pursuant to § 1915A(b)(1).

### C. The Alleged Sexual Assault.

Shelton has filed an Answer in response to Taylor's § 1983 sexual assault claim, which I have construed as alleging excessive force.   Shelton's summary judgment motion does not argue or present evidence that Taylor failed to exhaust administrative remedies as to this claim, nor does Shelton move for summary judgment on the merits of this claim.   Accordingly, I will direct Shelton to file any summary judgment motion on the merits of this § 1983 claim or it will be set for a jury trial as requested by Taylor in her Complaint.

### III.  CONCLUSION.

For the stated reasons, it is **ORDERED** as follows:

1.      Taylor's affidavit/motion, ECF No. 44, substituting Curtis Parr for the defendant previously identified as Regional Ombudsman, is GRANTED, and the Clerk shall amend the court's docket;

2.      The Motion to Dismiss, ECF No. 29, is GRANTED, and the Clerk will terminate the following defendants as parties to the action:   R. Whitt, M. Hodges, and C. Davis;

3.     All claims against Curtis Parr as the Regional Ombudsman are DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief could be granted, and the Clerk will terminate Parr as a party to the action;

4.   The motion by C. Shelton, ECF No. 34, is GRANTED to the extent that Taylor's retaliation claims against Shelton are DISMISSED WITH PREJUDICE; and

5.   Defendant Shelton is DIRECTED to file any Motion for Summary Judgment within 21 days from the entry of this Opinion and Order as to the remaining claim that Shelton violated Taylor's constitutional rights on May 6, 2020, by using excessive force against her during a frisk search.  If no such motion is filed within the allotted time, the matter will be set for a jury trial as to that issue.

ENTER:  February 16, 2022

/s/  JAMES P. JONES
Senior United States District Judge