# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JOVANNI M. TAYLOR,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:20CV00497 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **C. SHELTON, ET AL,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendants. ) | |

*Jovanni M. Taylor*, Pro Se Plaintiff; *Ann-Marie C. White*, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE AND PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendant.

This civil rights action under 42 U.S.C. § 1983 is presently before me on motions seeking summary judgment — one by the plaintiff, pro se inmate Jovanni M. Taylor, and one by the remaining defendant, C. Shelton.[1] The remaining claims allege that during a pat down search on May 6, 2020, Shelton used excessive force against Taylor and assaulted her, causing injuries to her genitalia. After review of these parties' motions and related submissions, the record, and the relevant video footage, I conclude that Shelton's Motion for Summary Judgment must be granted, and Taylor's Motion for Partial Summary Judgment must be denied.

---

[1] In a prior Opinion and Order, I dismissed all of Taylor's other claims in this case. *Taylor v. Shelton*, No. 7:20CV00497, 2022 WL 479769 (W.D. Va. Feb. 16, 2022).

I.

In my earlier Opinion addressing the defendants' prior dispositive motions, I summarized Taylor's allegations in support of her[2] remaining claim, as follows.

> At the time these claims arose, Taylor was confined at Keen Mountain Correctional Center ("KMCC"), a prison facility operated by the Virginia Department of Corrections ("VDOC"). Liberally construed, Taylor's Amended Complaint and other submissions offer the following factual basis for her claims. On May 6, 2020, in response to a fight in Taylor's housing unit, officers frisk searched all inmates and sent them to their cells for a lockdown. Taylor states that she must be searched by a female staff member. Decl. Opp'n. 3, ECF No. 43. She alleges that C-Building Unit Manager C. Shelton, a female officer, came to the pod after all except four inmates, including Taylor, had been searched. "Shelton was angry, or irritated, and was using profanity." *Id.* Taylor was the last inmate in the pod to be searched.
>
> According to Taylor, Shelton frisked one of Taylor's legs and then told her "open your legs wider." Am. Compl. 3, ECF No. 16. Then, when Shelton "went up [Taylor's] inner thighs she went up fast and hard. Hitting [Taylor] in [her] private region with force." *Id.*
>
> . . . .
>
> Later on May 6, 2020, Taylor alleges that she went to medical "due to the searing pain from [her] private region to [her] stomach. After seeing Doctor White her examination proved [Taylor] was assaulted in [her] private region." *Id.* at 3. Medical reports in the record indicate that Dr. White noted "mild tenderness" in Taylor's "left prepubertal region, left testicle tenderness" and "mild fullness compared to right side," but without bruising. Resp. Opp'n Attach. at 5, ECF No. 40-1. Dr. White prescribed pain medication as needed for ten days and use of an icepack on the affected area for twenty-minute periods for pain and swelling.

---

[2] While confined in a male prison, Taylor identifies as a woman and uses feminine pronouns. I will follow her preference.

*Taylor*, 2022 WL 479769, at *1–2 (footnotes omitted).  As stated, I dismissed all of Taylor's § 1983 claims except her allegation that Shelton used excessive force against her in violation of the Eighth Amendment.[3]  Thereafter, Shelton and Taylor filed their current motions that are now ripe for disposition.

Defendant Shelton, in support of her motion, provides additional details about the circumstances of the challenged pat down.  Whenever an inmate altercation occurs, policy requires officers to follow established protocols to secure the area.  They order all inmates in the area to lay on the ground with arms outstretched, palms up.  Officers restrain and remove inmates involved in the fight.  Then, they search all other inmates to ensure that they do not have a concealed weapon or contraband that they could take back to their cells.

Shelton, as Unit Manager of C Building, heard a radio call on May 6, 2020, for assistance with a fight in B-4 pod where Taylor was assigned.  Shelton reported to B-4 pod to assist.  Other officers had already removed the inmates involved in the fight and had searched all but four of the remaining pod inmates.  Because Taylor is transgender, policy requires that when she needs to be searched, a female officer will

---

[3] I expressly noted that Taylor's Amended Complaint, ECF No. 16, did not assert a state law assault claim. *Taylor*, 2022 WL 479769, at *2 n.4.  Taylor has not filed a Second Amended Complaint to assert such a claim in this case.  To the extent that she may be attempting to do so in her responses to the defendant's motions, she has raised no proper motion to amend, and I decline to exercise supplemental jurisdiction over any such claim, pursuant to 28 U.S.C. § 1367(c).

perform that search. That day, Shelton conducted a pat down on Taylor per policy. As she began the search, she instructed Taylor to spread her legs shoulder width apart with arms out and palms up. The pat down, per policy, includes running a hand around the subject's collar, arms, and arm pits, up and down each leg, and along the inner thighs to the groin area. Shelton denies hitting, feeling, or touching Taylor's private parts during the pat down. She states that she merely conducted a routine pat down.

Shelton testifies, "Taylor made no comments to me during the pat down nor did she yell out that I hurt her. She simply complied with the pat down search." Mem. Supp. Mot. Summ. J. Shelton Aff. ¶ 9, ECF No. 51-1. Shelton continues, "Even assuming that I inadvertently 'hit' Taylor's private parts during the pat down, I did not mean to do so. I would not intentionally 'hit' an inmate's private region(s), as that is inappropriate, unprofessional, and could lead to disciplinary action being taken against me." *Id.* at ¶ 12.

In response to Shelton's summary judgment motion, Taylor submits several repetitive briefs, affidavits, and a summary judgment motion of her own, all primarily restating the allegations of the Amended Complaint. I construe these submissions as incorporating the medical records and the video footage in the record. Taylor argues that Shelton's actions were malicious, and that no security risk existed at the time she searched Taylor. Taylor also describes ongoing ill effects from her

encounter with Shelton — occasional sharp pain in her testicle area, despondency, sadness, increased dysphoria, decreased appetite and sleep, hair loss from worry over possible retaliation, and fear of being alone.

## II.

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, Taylor must present sufficient evidence that could carry the burden of proof of her claims at trial. *Id.* at 252. She "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in her favor. *Id.* at 248.[4]

Thus, the court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). A pro se litigant's verified complaint and

---

[4] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

-5-

amended complaint, or other verified submissions must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). Where a pro se plaintiff fails to respond to a defendant's specific evidence contradicting the conclusory allegations or assertions of the complaint, however, that defendant may be entitled to summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

Taylor brings her lawsuit pursuant to 42 U.S.C. § 1983. Under this statute, an aggrieved party may file a civil action against a person for actions taken under color of state law that violate her federal constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). I have construed Taylor's remaining claim as asserting that Shelton's actions violated her Eighth Amendment right to be free from cruel and unusual punishments while incarcerated.

My consideration of this claim must apply a two-prong analysis. *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The first prong is objective and requires the defendant officer's alleged misconduct to be "sufficiently serious" to constitute cruel and unusual punishment. *Farmer*, 511 U.S. at 834. Put another way, the officer's actions must be shown "objectively harmful enough to offend contemporary standards of decency." *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998). The second prong is subjective,

requiring facts showing that the defendant acted with a "sufficiently culpable state of mind," *id*., or more specifically in the circumstances alleged here, acted "maliciously and sadistically us[ing] force to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

"While excessive force does require malicious intent, it does not require that the prisoner victim suffer" a lasting or significant physical injury. *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated" and Eighth Amendment is violated. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Thus, satisfying the objective component of an excessive force claim requires showing the force used was "nontrivial." *Wilkins*, 559 U.S. at 39. The extent and nature of the injury is relevant to my analysis as an indication of the type and amount of force the defendant applied. *Id.* at 37.

> [N]ot every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

*Id.* at 37–38.

"There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation." *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016)

(unpublished). But it is recognized that not all alleged incidents of sexual misconduct are objectively, sufficiently serious to constitute a violation of the Eighth Amendment. *Id.* (distinguishing between physical "sexual abuse" and verbal "sexual harassment"). In the sexual assault context, "[t]o state an Eighth Amendment claim, however, [a plaintiff] must allege facts on which he could prove that the unwanted touching had some [objectively] sexual aspect to it; his own [subjective] perceptions alone that the contact was of a sexual nature are not sufficient." *Lee v. Kanode*, No. 7:20-CV-00305, 2022 WL 4798263, at *5 (W.D. Va. Sept. 30, 2022).

In evaluating the subjective element of the excessive force standard, I must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. I must determine if facts show that Shelton

> acted maliciously or wantonly by applying a non-exclusive, four-factor balancing test:
>
> (1) the need for the application of force;
>
> (2) the relationship between the need and the amount of force that was used;
>
> (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and
>
> (4) any efforts made to temper the severity of a forceful response.

*Thompson,* 878 F.3d at 99.

Under these principles, I conclude that Shelton is entitled to summary judgment on Taylor's claim, based on evidence of de minimis force employed and on the lack of factual support for the self-serving assertion that Shelton acted with any malicious or sexual intent. For these reasons, Taylor's claim fails under both prongs of the constitutional analysis, and her summary judgment motion must be denied.

Taylor asserts that the surveillance video footage proves that Shelton used excessive force. I cannot agree. I have reviewed the video footage at length. It depicts Shelton performing a one-time, routine, pat down search of Taylor, running her hands along her collar, under her arms, and down each inner thigh. The video does not show Shelton acting with unusual aggression or violence during any portion of the pat down, and Shelton denies doing so. Nor does the video depict Taylor flinching in pain when Shelton searches her inner thigh area. It is undisputed that after the pat down, Taylor did not ask Shelton for immediate medical attention. And the footage shows that Taylor walks away after the search at a normal pace, without reacting in any way that reflects she had just suffered a groin injury as she alleges.

Taylor also contends that the medical reports in the record demonstrate the type of injury that proves Shelton used excessive force. Again, I disagree. Taylor alleges that she has suffered significant pain and other uncomfortable after-effects since the encounter with Shelton. But she offers no medical record or opinion to

support her conclusory assertion that Shelton's actions caused these adverse effects. On the other hand, the medical reports from May 6, 2020, reflect merely some observable difference in size between Taylor's right and left testicles and some mild tenderness on the left side without any bruising. *Taylor*, 2022 WL 479769, at *2. The doctor's treatment decisions that day — pain medication as needed for ten days and use of an icepack to address the pain and swelling — do not support a finding that Taylor had suffered serious harm. Moreover, the nature of the injuries the doctor noted strongly support a finding that Shelton did not use more than de minimis force during the search, as she herself testifies. Furthermore, Taylor does not allege any facts indicating that Shelton's actions during the frisk search were of a sexual nature or were performed so as to gratify Shelton's personal desires in any way.

Based on the evidence Taylor offers, I find no genuine issue of disputed fact on which she could persuade a fact finder that she suffered an objectively serious physical or sexual injury from Shelton's actions. I also find no genuine issue of disputed fact showing the subjective aspect of Taylor's § 1983 claim.

It is undisputed that on May 6, 2020, Shelton had a legitimate security reason to search Taylor. Some inmates in Taylor's pod had been fighting and according to security policy, officers needed to search all inmates in that area for contraband before they returned to their cells. The fact that Taylor was the last inmate to be searched did not cancel out this policy requirement or eliminate the need for Shelton

to search Taylor. Shelton was using physical contact with Taylor only in an effort to ensure that the pod was restored to order after the altercation. Shelton's actions are clearly distinguishable from cases in which the accused officer instigates overtly sexual contact with an inmate separate from any legitimate security procedure and merely for the officer's own sexual gratification. *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant.").

Shelton denies that she intentionally struck Taylor's genitals during the pat down on May 6, 2020. Taylor's self-serving allegations that Shelton was frustrated or angry at being asked to search her are not sufficient to place this incident in the severe or serious category of alleged excessive force or sexual abuse on inmates by an official. Rather, the undisputed need for the search, and the minimal nature of Taylor's injuries as the doctor noted them, indicate that Shelton made an effort to use minimal force in performing the frisk as expected by her job. The evidence does not support a finding that Shelton maliciously used force against Taylor or sexually abused her during that frisk.

Taking the evidence in the light most favorable to Taylor, she fails to present any genuine issue of material fact on which jurors could find that Shelton

maliciously used force during the one-time frisk search on May 6, 2020, to cause harm or for sexual gratification.

### III.

For the reasons stated, it is hereby **ORDERED** as follows:

1. Taylor's equal protection claim against Shelton is DISMISSED under 28 U.S.C. § 1915A(b)(1) for failure to state a claim;[5]

2. Shelton's Motion for Summary Judgment, ECF No. 50, is GRANTED; and

3. Taylor's Motion for Summary Judgment, ECF No. 56, is DENIED.

A separate Judgment will enter herewith.

ENTER: February 24, 2023

/s/ JAMES P. JONES
Senior United States District Judge

---

[5] This ruling is based on findings from my prior Opinion in this case and was inadvertently omitted from my prior Order. *See Taylor*, 2022 WL 479769 at *6.